UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
PAULINO UTO, JOSE EDWIN LOPEZ and
JOSE ALAS,
On Behalf of themselves and others
similarly situated,

                                               Plaintiffs,        <u>MEMORANDUM
OPINION AND ORDER</u>

             -against-                           CV 10-0529 (SJF) (ETB)

JOB SITE SERVICES INC.,
JOHN O'SHEA
in his individual capacity,

                                               Defendants.
------------------------------------------------------------------------X

     Before the court is the plaintiffs' motion for a protective order, pursuant to Federal Rule of Civil Procedure 26(c). Specifically, plaintiffs seek a protective order with respect to certain of defendants' document demands and interrogatory requests on the grounds that the discovery requests aim to gather information concerning plaintiffs' immigration status. Plaintiffs assert that such information is prejudicial and irrelevant. For the following reasons, plaintiffs' motion is granted.

<u>FACTS</u>

     Plaintiffs, Paulino Uto, Jose Edwin Lopez and Jose Alas, are former employees of defendant Job Site Services Inc. ("JSS"), a demolition and construction company who employed all of the plaintiffs as laborers. (Compl. ¶ 1.) Plaintiffs bring this collective action, pursuant to

the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), on behalf of themselves and other current and former employees of JSS, alleging that they routinely worked in excess of forty hours per week, for which they were not paid overtime compensation. (Compl. ¶ 15.) Plaintiffs further assert that they are owed back wages, pursuant to the New York Labor Law, for having worked hours for which they only received partial payment. (Compl. ¶¶ 2, 17.) Finally, plaintiffs assert that they were not paid minimum wage. (Compl. ¶ 1.)

At issue herein are certain document demands and interrogatory requests served on plaintiffs by defendants, JSS and its owner, John O'Shea ("O'Shea"), who is named herein as an individual defendant. Plaintiffs assert that the disputed discovery requests, which seek their social security numbers and income tax returns, seek to gather information concerning plaintiffs' immigration status, which is irrelevant and prejudicial. Defendants contend that they need such information in order to assert a defense of unclean hands in response to plaintiffs' allegations that O'Shea engaged in a "large scale tax evasion and wage and hour violation scheme," by which he payed workers "off the books" (i.e., in cash), either in full or in part, filed false income tax returns and maintained false account books and records. (Compl. ¶¶ 27-28.) Plaintiffs assert that a defense of unclean hands is not available to defendants because plaintiffs' claims are legal, not equitable.

DISCUSSION

I. Legal Standard

Pursuant to Federal Rule of Civil Procedure 26(c), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue

burden or expense." Fed. R. Civ. P. 26(c)(1). "The rule serves in part to protect parties' privacy interests," Duling v. Gristede's Operating Corp., 266 F.R.D. 66, 71 (S.D.N.Y. 2010) (citing Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35 n.1 (1984)) (additional citation omitted), and "allows for the crafting or appropriate relief," including prohibiting the disclosure or discovery altogether. Duling, 266 F.R.D. at 71 (citation omitted); see also Fed. R. Civ. P. 26(c)(1)(A).

"Under Rule 26(c), the trial court has 'broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required.'" Duling, 266 F.R.D. at 72 (quoting Seattle Times, 467 U.S. at 36) (additional citation omitted); see also Dove v. Atlantic Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992) ("The grant and nature of protection is singularly within the discretion of the district court . . . ."). However, the party seeking to obtain a protective order bears the burden of demonstrating that there is good cause for the order. See Dove, 963 F.2d at 19; Duling, 266 F.R.D. at 71; Doe No. 2 v. Kolko, 242 F.R.D. 193, 198 (E.D.N.Y. 2006). To establish good cause, the moving party must demonstrate "a particular need for protection," Duling, 266 F.R.D. at 71 (citation omitted), such that "disclosure will result in a specific injury." Doe No. 2, 242 F.R.D. at 198 (citation omitted).

II.     Discovery Concerning Immigration Status

Among other things, defendants' discovery requests seek, in various ways, the social security numbers of the plaintiffs. Plaintiffs assert that such information is not relevant and is merely an attempt by defendants to ascertain plaintiffs' immigration status. Defendants contend that the information they seek is relevant; however, they fail to explain how plaintiffs' social security numbers are relevant to this action. For the reasons discussed below, I find that

plaintiffs' have established good cause for the issuance of a protective order.

"Numerous lower courts have held that all employees, regardless of their immigration status, are protected by the provisions of the FLSA." Flores v. Amigon, 233 F. Supp. 2d 462, 463 (E.D.N.Y. 2002) (collecting cases). Accordingly, "courts addressing the issue of whether defendants should be allowed to discover plaintiff-workers' immigration status in cases seeking unpaid wages brought under the FLSA have found such information to be undiscoverable." Liu v. Donna Karan Int'l, Inc., 207 F. Supp. 2d 191, 192 (S.D.N.Y. 2002) (citing cases); see also Rengifo v. Erevos Enter., Inc., No. 06 Civ. 4266, 2007 WL 894376, at *3 (S.D.N.Y. Mar. 20, 2007) (granting protective order barring defendants from inquiring about plaintiff's immigration status or social security number); Avila-Blum v. Casa De Cambio Delgado, 236 F.R.D. 190, 191-92 (S.D.N.Y. 2006) (overruling defendants' objections to magistrate's order that granted plaintiff a protective order barring defendants from inquiring into her immigration status); Topo v. Dhir, 210 F.R.D. 76, 79 (S.D.N.Y. 2002) (finding that plaintiff had demonstrated good cause to warrant a protective order barring defendants from inquiring into her immigration status). Specifically, courts have noted that permitting inquiry into a party's immigration status, when not relevant, presents a "danger of intimidation [that] would inhibit plaintiffs in pursuing their rights." Topo, 210 F.R.D. at 78 (quoting Liu, 207 F. Supp. 2d at 193) (alteration in original); see also Rengifo, 2007 WL 894376, at *2 (noting that "[c]ourts have recognized the in terrorem effect of inquiring into a party's immigration status and authorization to work in this country when irrelevant to any material claim").

Even where it is arguable that information concerning a plaintiff's immigration status may be relevant, courts have generally held that "the potential for prejudice far outweighs

whatever minimal probative value such information would have." Amigon, 233 F. Supp. 2d at 464-65 (citing Liu, 207 F. Supp. 2d at 193). As several courts have noted, "it is entirely likely that any undocumented [litigant] forced to produce documents related to his or her immigration status will withdraw from the suit rather than produce such documents and face . . . potential deportation." Topo, 210 F.R.D. at 78 (quoting Flores v. Albertsons Inc., No. 01 CV 00515, 2002 WL 1163623, at *5 (C.D. Cal. Apr. 9, 2002)) (alteration in original); see also Amigon, 233 F. Supp. 2d at 465 n.2 ("If forced to disclose their immigration status, most undocumented aliens would withdraw their claims or refrain from brining an action such as this in the first instance."). Such a chilling effect would "effectively eliminate the FLSA as a means for protecting undocumented workers from exploitation and retaliation." Amigon, 233 F. Supp. 2d at 465 n.2 (citing Flores, 2002 WL 1163623, at *6).

For the foregoing reasons, I find that plaintiffs have established good cause for the issuance of a protective order barring discovery concerning their immigration status or their social security numbers. Allowing discovery of plaintiffs' immigration status "would cause them embarrassment and if their status is found to be illegal would subject them to criminal charges and, possibly, deportation." EEOC v. First Wireless Group, Inc., 225 F.R.D. at 404, 406 (E.D.N.Y. 2004). Accordingly, plaintiff's request for a protective order is granted with respect to those discovery requests that seek their social security numbers or directly or indirectly inquire into plaintiffs' immigration status.

III.    Discovery of Tax Returns

Defendants' document requests also seek the production of copies of plaintiffs' income tax returns, as well as information concerning whether plaintiffs have filed tax returns in the past. Plaintiffs object to disclosure of their tax returns on the grounds that they are not relevant and are yet another attempt to discover plaintiffs' immigration status. Defendants, without explanation, assert that plaintiff's tax returns are relevant.

Although income tax returns are not inherently privileged, courts are typically reluctant to compel their disclosure because of both "the private nature of the sensitive information contained therein" and "the public interest in encouraging the filing by taxpayers of complete and accurate returns." Smith v. Bader, 83 F.R.D. 437, 438 (S.D.N.Y. 1979). To compel the disclosure of income tax returns, a two-part test must be satisfied: (1) the returns must be relevant to the subject matter of the action and (2) there must be a compelling need for the returns because the information is not "otherwise readily obtainable." United States v. Bonanno Family of La Cosa Nostra, 119 F.R.D. 625, 627 (E.D.N.Y. 1988) (citing S.E.C. v. Cymaticolor Corp., 106 F.R.D. 545, 547 (S.D.N.Y. 1985)).

Various courts have applied this two-part test, often with differing burdens of proof. Generally, the party seeking discovery of the income tax returns bears the burden of demonstrating relevancy. Bonanno, 119 F.R.D. at 627. With respect to the second prong of the test, some courts shift the burden to the party opposing the discovery to establish the existence of alternative sources for the information. Compare Airmont Homes, Inc. v. Nalitt, No. 93 CV 5669, 1995 WL 313147, at *2, (E.D.N.Y. May 12, 1995) (granting plaintiff's motion to compel defendant's tax returns when defendant failed to show availability of alternative sources), with

Sabatelli v. Allied Interstate, Inc., No. CV 05-3205, 2006 WL 2620385, at *1 (E.D.N.Y. Sept. 13, 2006) (denying plaintiff's motion to compel defendant's tax returns when plaintiff failed to show a "compelling need"). However, the modern trend appears to require the party seeking discovery to demonstrate both relevancy and a compelling need. See, e.g., Ellis v. City of New York, No. 06 CIV. 4827, 2007 WL 1746255, at *3 (S.D.N.Y. Jun. 15, 2007) (quashing subpoena for plaintiff's tax returns when defendants failed to satisfy the two-part test); Barkley v. Olympia Mortg. Co., No. 04 CV-875, 2007 WL 656250, at *7 (E.D.N.Y. Feb. 27, 2007) (denying plaintiff's motion to compel defendants' tax returns for failure to show a compelling need).

I find that plaintiffs' income tax returns are not relevant to their FLSA claims, which are the crux of their Complaint. Nor have defendants demonstrated a compelling need for them. Accordingly, plaintiffs' request for a protective order is granted with respect to the discovery requests that seek copies of their income tax returns or information about the filing of income tax returns.

IV.     Unclean Hands Defense

Defendants contend that the information sought in their discovery requests is central to their defense of unclean hands, which they plan to assert.[1] However, it is black-letter law that "[u]nclean hands is an equitable defense." Aniero Concrete Co., Inc. v. New York City, Nos. 94 Civ. 9111, 95 Civ. 3506, 1998 U.S. Dist. LEXIS 3938, at *33 (S.D.N.Y. Mar. 30, 1998), aff'd by

---

[1] The Court notes that defendants' Answer does not plead the affirmative defense of unclean hands. Accordingly, defendants would need to seek leave of the Court to amend their Answer to assert such a defense. For the reasons discussed infra, such an amendment would be futile.

Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566 (2d Cir. 2005) (citing cases). As such, it "can only be asserted with respect to equitable - not legal - claims." SEC v. Eberhard, No. 03 Civ. 813, 2006 U.S. Dist. LEXIS 216, at *11 (S.D.N.Y. Jan. 3, 2006)

Here, all of the claims asserted in plaintiffs' Complaint are legal claims, for which they seek damages pursuant to the FLSA and the New York Labor Law. No request for equitable relief is found anywhere in plaintiffs' Complaint. Accordingly, "because [plaintiffs] seek damages in an action at law, [defendants] cannot avail [themselves] of unclean hands as a defense." Aniero Concrete, 1998 U.S. Dist. LEXIS 3938, at *33; see also Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 464 (S.D.N.Y. 2008) (finding the defense of unclean hands "inapplicable" where "the Court need not invoke its equitable powers to adjudicate Plaintiffs' statutory claim[s]" brought pursuant to the FLSA and the New York Labor Law).

Based on the foregoing, I find that the discovery sought by defendants cannot be relevant to any defense of unclean hands because defendants are not able to assert such a defense in this action.

## Conclusion

For the foregoing reasons, plaintiffs' motion for a protective order is granted in its entirety.

**SO ORDERED:**

Dated: Central Islip, New York
       September 20, 2010

                                          /s/ E. Thomas Boyle
                                          E. THOMAS BOYLE
                                          United States Magistrate Judge